UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MEGAN ELLIOTT, in her Personal Capacity and as Personal Representative of the Estate of TIM ELLIOTT, deceased,<br><br>    Plaintiff,<br><br>    v.<br><br>MASON COUNTY, a political subdivision of the State of WASHINGTON; CASEY SALISBURY, Sheriff, Mason County Sheriff's Office, individually and in his official capacity acting under the color of state law;<br><br>    Defendants. | CASE NO. 17-6067<br><br>ORDER ON DEFENDANT SERGEANT TREVOR SEVERANCE'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

    This matter comes before the Court on Defendant Sergeant Trevor Severance's Motion for Partial Summary Judgment (Dkt. 27) and Plaintiff's response, which while not properly labeled, should be construed as a Fed. R. Civ. P. 56 (d) motion (Dkt. 29). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

    On December 22, 2017, Plaintiff Megan Elliot filed this case, on behalf of herself and as the personal representative of her father Tim Elliott's estate, in connection with the shooting

death of Mr. Elliot by Defendant Mason County Sheriff's Department Sergeant Trevor Severance. Dkt. 1 and 23. Plaintiff asserts federal constitutional claims for violation of her father's Fourth Amendment right against unreasonable seizures and for violation of her Fourteenth Amendment due process right to the companionship of her parent. Dkt. 23. She also makes state law claims for negligence, gross negligence, battery, negligent use of excessive force, and outrage. *Id.* Plaintiff seeks damages, attorneys' fees, and costs. *Id.*

Defendant Severance now moves for summary dismissal of the Fourth Amendment claim only, asserting that he meets both prongs of the test for qualified immunity. Dkt. 27. Plaintiff opposes the motion and asserts that more discovery is needed before a decision can be made on the motion. Dkt. 29. For the reasons provided below, the motion to summarily dismiss the Fourth Amendment claim asserted against Defendant Severance (Dkt. 27) should be stricken, to be renoted at the completion of discovery, if appropriate, and Plaintiff's Fed. R. Civ. P. 56 (d) motion (Dkt. 29) should be granted.

## I. RELEVANT BACKGROUND FACTS

In the evening of January 2, 2015, Sergeant Severance responded to a dispatch of a shooting on East Island Lake Drive, in Shelton, Washington. Dkt. 30-1, at 2-3. The recording of the dispatch call provides that the reporting party "states his dad just shot himself . . . We're still trying to get information . . . [a]nd it sounds like we're trying to do CPR now." Dkt. 30-1, at 2.

In support of his motion, Sergeant Severance filed a declaration in which he adopted (with the exception of the addition of a single word) the statements he made during a January 6, 2015 Grays Harbor County Sheriff's Department representative's interview about the incident. Dkt. 28-1, at 2-3. In this interview, Sergeant Severance states that right after he heard the dispatch, he grabbed extra latex gloves and his first aid kit (which was full of equipment to help

trauma victims) and headed out. Dkt. 28-1, at 6 and 21. In addition to being a police officer, he is an EMT and has been for 20 years. Dkt. 28-1, at 6. As he left for the house, he was in the "mind-set of . . . all the scenarios of what we're going to need to do to help Aid help this guy." Dkt. 28-1, at 13.

Sergeant Severance, reporting that he was in the area, received an update from the dispatcher, who stated, "Update is the hand is on his, correction, the gun is on his hand. The [reporting party] is unsure exactly what you need done with that." Dkt. 30-1, at 2. Sergeant Severance told the dispatcher to tell the reporting party, who he now knows was Ms. Elliot, "Don't touch anything except for trying to revive [Mr. Elliot]." *Id.*

Sergeant Severance states that he pulled up to the house, grabbed his kit, pulled on his latex gloves, and ran up to the front door. Dkt. 28-1, at 6. He knocked and announced himself, then heard a girl scream and so entered the house, moving toward the scream. Dkt. 28-1, at 7. Sergeant Severance headed down a hall, entered a room to his left, and there was another small hall with a wall to his right, "and the room kind of turn[ed] and open[ed] up into a larger room." Dkt. 28-1, at 7. He saw Ms. Elliott at the foot of the bed, the man he now knows to be Tim Elliot on the bed, laying on his back. *Id.*

Sergeant Severance then describes events as follows:

> And I look at her, I look to him to start assessing the scene to make sure it's safe and what I need to do; and I realize that he's actually making eye contact with me, which was strange because they were supposed to be doing CPR on him. And I look and he's laying on the bed and his shoulders are somewhat propped upon a pillow. And in his right hand, laying on the -- on the bed, was a handgun. It was a revolver.

Dkt. 28-1, at 7. (Sergeant Severance states that when he heard from dispatch that they were performing CPR on the victim, it meant to him, as an EMT, that the victim was non-responsive.

Dkt. 28-1, at 22.) He states that he "kind of switch[ed] gears, grabbed her, got her out of the room." Dkt. 28-1, at 7. According to Sergeant Severance, Ms. Elliot was hysterical, but followed his command to leave the room. Dkt. 28-1, at 16.

Sergeant Severance states that he "got in behind that small wall, which [he] believe[d] was a part of a closet. [He was] less than six feet from the bed, and it [was] the only concealment [he] had" to still be able to see Mr. Elliot. Dkt. 28-1, at 7. Sergeant Severance began yelling, "Drop the gun," several times. Dkt. 28-1, at 8. He states that Mr. Elliot was looking right at him, and that he felt Mr. Elliot was "hearing" him. *Id.* Sergeant Severance states that "during this process, at least twice, [Mr. Elliot] says, 'Just shoot me.'" Dkt. 28-1, at 8. Mason County Sheriff's Deputy Alfonso Mercado arrived on the scene. Dkt. 28-1, at 73. (Deputy Mercado also filed a declaration in support of the motion, and in it, he adopts his statements made to Thurston and Lewis County Sheriff's Department representatives in their investigative interview. Dkt. 28-1, at 73-74).

As Deputy Mercado entered the room, Sergeant Severance ordered him to confirm that Ms. Elliot was safely away. Dkt. 28-1, at 8. Deputy Mercado states that he returned, but could not see Mr. Elliot around Sergeant Severance and some clothes hanging on a rack in the room. Dkt. 28-1, at 79. At this point, Sergeant Severance states that:

> [Mr. Elliot] brings the gun up from the bed and puts it to the side of his head. And . . . it's a Smith & Wesson .357 or .38. . . . And he's still looking at me. And he says, "Shoot me." . . . [He] can see [Mr. Elliot's] finger on the trigger. And it appears he's either just fingered the trigger or trying to pull the trigger.

Dkt. 28-1, at 8-9. Sergeant Severance indicates that he kept telling Mr. Elliot to drop the gun, but at that point he was "scared to death" and "deathly afraid . . . that [he was] not going to make it out of [the] room that night, or [Deputy] Mercado." Dkt. 28-1, at 9. He continues:

> So I'm watching and I'm watching. He's still got his finger there. And then I remember the gun comes off of his temple and starts to come out towards me to the point I just start to see inside the crown. And at that point I decided to shoot because any more than that I wasn't -- I wasn't going to have enough reaction time to save my own life. And, um, so I fired two shots.

Dkt. 28-1, at 9. Just before Sergeant Severance fired, Deputy Mercado states that Sergeant Severance said, "He is pointing it at me." Dkt. 28-1, at 79. While Sergeant provided him cover, Deputy Mercado approached Mr. Elliot, checked for a pulse, then began applying pressure to the gunshot wound in Mr. Elliot's abdomen. Dkt. 28-1, at 79. The paramedics arrived and took over, but Mr. Elliot did not survive. Dkt. 23.

This case is set to begin trial on March 4, 2019. Dkt. 25. The discovery deadline is several months away - November 5, 2018. *Id.*

**PENDING MOTION**

In his pending motion for partial summary judgment, Sergeant Severance moves to dismiss the fourth amendment excessive force claim only. Dkt. 27. He maintains that he did not violate Mr. Elliot's fourth amendment rights, and even if he did, those rights were not clearly established at the time, so he is entitled to qualified immunity. *Id.*

Plaintiff opposes the motion. Dkt. 29. She points out that a majority of discovery still has not yet been completed: (with the exception of the Mason County representative) depositions of the officers have not been done; she anticipates an expert witness will testify that Mr. Elliot's body and hands could not have been positioned as Sergeant Severance describes; she raises questions regarding the timing of events; and she asserts that Sergeant Severance and Deputy Mercado offer only self-serving affidavits in support of the motion. *Id.* She argues that no decision should be made until discovery is complete. *Id.* Although it is not labeled as such,

the Court should construe Plaintiff's response, in part, as a Fed. R. Civ. P. 56 (d) motion to defer or deny a decision on the motion until more discovery is conducted.

In her response, Plaintiff also argues that, even if the Court does not deny the motion so that more discovery can be done, Sergeant Severance did violate her father's fourth amendment rights and those rights were clearly established. Dkt. 29.

Sergeant Severance filed a reply, pointing out that Plaintiff did not offer an affidavit to contradict his evidence. Dkt. 33. He maintains that he did not violate Mr. Elliot's rights, and even if he did, he is entitled to qualified immunity because those rights were not clearly established. *Id.*

**ORGANIZATION OF OPINION**

This opinion will first provide the summary judgment standard, then address whether Plaintiff's motion under Rule 56 (d) should be granted, and lastly, consider Sergeant Severance's motion for partial summary judgment on the excessive force claim, if necessary.

**II.     DISCUSSION**

**A. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

### B. PLAINTIFF'S RULE 56 (d) MOTION

Fed. R. Civ. P. 56 (d) provides that if the non-moving party shows "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." A party requesting relief pursuant to Rule 56(d) "must identify by affidavit the specific facts that further discovery

would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).

Plaintiff's motion to defer consideration of the summary judgment motion pursuant to Fed. R. Civ. P. 56 (d) (Dkt. 29) should be granted. Although it is a close question, Plaintiff has identified specific facts that further discovery might reveal that may preclude summary judgment. The Court is mindful that the central party that might give testimony against Defendants, Mr. Elliot, is deceased. Moreover, deferral of the motion until discovery has occurred serves the interest of fully and fairly considering the claims asserted here. Parties should focus their discovery on issues related to qualified immunity.

**C. SERGEANT SEVERANCE'S MOTION FOR QUALIFIED IMMUNITY**

Sergeant Severance's motion for partial summary judgment (Dkt. 27) should be stricken, but maybe re-filed after parties have conducted discovery.

**III.  ORDER**

Therefore, it is hereby **ORDERED** that:

- Defendant Sergeant Trevor Severance's Motion for Partial Summary Judgment (Dkt. 27) **IS STRICKEN**, to be re-filed, if appropriate, after the parties have conducted discovery; and
- Plaintiff's Fed. R. Civ. P. 56 (d) motion (Dkt. 29) **IS GRANTED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 19th day of June, 2018.

ROBERT J. BRYAN
United States District Judge